UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

JAMMIE L. YERKS,

          Plaintiff,

v.                                               Case No. 17-cv-1735-pp

PAMELA SHURPIT, and
CAPT. JOSEPH FALKE,

          Defendants.

---

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DKT. NO. 16) AND DISMISSING CASE**

---

Plaintiff Jammie L. Yerks, a state prisoner representing himself, alleges that the defendants violated his constitutional rights by requiring him to work despite his medical restrictions. Dkt. No. 1. On November 26, 2018, the defendants moved for summary judgment based on the plaintiff's failure to exhaust his administrative remedies. Dkt. No. 16. The court will grant the defendants' motion.

**I.    Facts**

During the events he describes in the complaint, the plaintiff was incarcerated at Dodge Correctional Institution. Dkt. No. 18 at ¶1. The defendants were employed at Dodge: Pamela Shurpit was the Food Service Manager and Joseph Falke was the Administrative Captain. Id. at ¶¶2-3.

1

In September 2014, the plaintiff was working as a "DR-Utility or "dining room utility" worker. Id. at ¶15. On September 18, he reported to a staff member that he'd injured his shoulder; he said he'd heard a popping in his right shoulder. Id. at ¶16; Dkt. No. 20-1 at 2, 4. A few days later, the plaintiff was placed on a medical restriction. Dkt. No. 18 at ¶18. The restriction resulted in the plaintiff being unable to perform his previous job duties. Id. He was off work for four days, worked again for five days, and was off again for almost two weeks. Id. at ¶¶19-20. He was able to work with no restrictions for about three months. Id. at ¶¶21-22. On February 2, 2015, however, he was placed on a light duty restriction, which prohibited him from working any job that required lifting or pulling. Id. at ¶22. This meant that he could not work in food service. Id. at ¶23.

The light duty restriction was removed three months later, on May 5, 2015, and the plaintiff "was notified he was rehired to food service for 'any activity.'" Id. at ¶24. The plaintiff was hired as a "DR-Utility worker" in the food service department on June 7, 2015, id. at ¶25, but nine months later was returned to light duty, then to no-work status, and so lost that position, id. at ¶26. The no-work restriction expired a little over a month later—April 14, 2016—and on June 27, 2016, the plaintiff was re-hired as a kitchen relief worker with a "moderate activity" restriction. Id., ¶29. He maintained a medical restriction of moderate activity. Id. at ¶¶27-29.

The Health Services Unit (HSU) issues medical restrictions. Id. at ¶13. In order to make food service managers were aware of the medical restrictions of inmate food service workers, HSU had inmate runners update food service with restriction information throughout the day. Id. Inmate worker clerks would input the information into an access program, allowing the information to automatically appear on the food service worker's daily timesheet. Id. Inmate worker clerks would print the timesheets, and defendant Shurpit, as Food Service Manager, indicated that she checked each timesheet at the beginning of each shift for medical restrictions. Id. at ¶¶12, 14.

On the day at issue, August 17, 2016, the plaintiff's medical restriction was listed as "moderate duty." Id. at ¶33; Dkt. No. 19-2 at 3. This meant that, among other things, he was "restricted from work involving heavy lifting over 50 pounds." Dkt. No. 18 at ¶30. The plaintiff started work that day at 6:30 a.m. and worked until 8:15 a.m. Id. at ¶33. While the defendants state that during that time no one required the plaintiff to lift over fifty pounds, id., the plaintiff alleges that Shurpit required him to lift over sixty pounds or face disciplinary action, despite his restriction and despite him telling her he had a new, more limiting restriction in place, dkt. no. 25 at ¶¶30-31, 33. The defendants agree that the plaintiff had a new work restriction—moderate activity, "but with special instructions not to engage in repetitive motion or overhead lifting with his right arm," and "he was to lift nothing over 5 lbs. with his right arm," but they indicate that this more limited restriction was not entered into the

3

automated system until 9:25 a.m.—after the plaintiff had finished his shift. The medical staff wouldn't have sent the restriction form to food services until after they'd entered it into the automated system. Id. at ¶35. They also indicate that no one from HSU contacted Shurpit to tell her about the change. Id. at ¶36. The plaintiff disagrees—he says *he* told Shurpit about the change in the restriction. Dkt. No. 25 at ¶¶33-34.

In his complaint, the plaintiff alleged that he wrote to defendant Captain Falke to complain about what Shurpit had done, but he did not state when he did this. Dkt. No. 1 at p. 2, ¶B5. Falke asserted that although he looked for it, he could not find the plaintiff's letter. Dkt. No. 18 at ¶39. Falke says that if the plaintiff had complained "about something that happened during an earlier work shift, he would not have been able to do anything to change it;" he says he would have told the plaintiff to contact HSU or to file an inmate complaint. Id. at ¶40.

The plaintiff was terminated from food service on August 18, 2016; the stated reason was because the plaintiff had received an "unsatisfactory work evaluation" within the first sixty days. Dkt. No. 21-2 at 9-10. Prison policy at Dodge required all inmates in general population to have jobs. Dkt. No. 18 at ¶41. The plaintiff had thirty days from the date he was terminated to find a new job. Id. at ¶42; Dkt. No. 21-2 at 10. The plaintiff applied for a new job (as a custodian) on September 28, 2016—over thirty days from the date he was terminated from food service. Dkt. No. 18 at ¶44. On October 27, 2016, the

programs review committee decided to transfer the plaintiff to the Wisconsin Secure Program Facility in Boscobel, partly because he hadn't found a job in thirty days and partly because he had received a major conduct report in the days after his job was terminated. Id. at ¶45.

The plaintiff filed two inmate complaints about losing his job and being transferred to Boscobel. Id. at ¶4. The first was inmate complaint DCI-2016-17910, filed on August 22, 2016. Dkt. No. 21-3 at 11. In that complaint, the plaintiff said that on August 16, 2016, he had asked his unit officer to check to see whether he had any medical restrictions noted in the computer system. Id. After learning that he did not, the plaintiff stated that he wrote to Dr. Hoftiezer on August 17, 2016, asking to have his medical restrictions entered into the system. Id. The complaint indicated that Dr. Hoftiezer "promptly placed in the computer system" those work restrictions. Id. The complaint indicated that on August 18, 2016, the plaintiff was "called to the kitchen and given a 12 evaluation." Id. The complaint asserted that the plaintiff received the low evaluation as a "direct result of the doctor posting [his] work restrictions," that he never had received a low evaluation previously and that he was fired once the medical restrictions "were brought to light." Id. at 12. The plaintiff argued that it was not "appropriate or right that" he was fired because he was injured." Id. The plaintiff's inmate complaint was dismissed, id. at 3, and his appeal was dismissed, id. at 8.

The second inmate complaint was DCI-2016-24492 filed on November 8, 2016. Dkt. No. 21-4 at 6. This complaint alleged that the plaintiff was transferred to Boscobel from Dodge in retaliation and discrimination "due to [his] medical work restrictions [] as well as being punished for the Adminstrated Complaint that [he] filed against Mrs. Pamela Shurpit, and Jeffery Cappelle for the termination of [his] position as a Kitchen Relief because of [his] medical restrictions." Id. at 6-7. That complaint was dismissed, id. at 3, and the plaintiff did not appeal the dismissal, dkt. no. 18 at ¶7. The plaintiff asserts that this second complaint "is not relevant to the claims herein." Dkt. No. 25 at ¶6.

## II. Standard of Review

Summary judgment is appropriate when the moving party shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). All reasonable inferences are construed in favor of the nonmoving party. Foley v. City of Lafayette, 359 F.3d 925, 928 (7th Cir. 2004). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." Siegel v. Shell Oil Co., 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." Id. Summary judgment is properly entered against a party "who fails to make a showing sufficient to establish the existence of an element

6

essential to the party's case, and on which that party will bear the burden of proof at trial." Parent v. Home Depot U.S.A., Inc., 694 F.3d 919, 922 (7th Cir. 2012) (internal quotations omitted).

## III. Analysis

The Prison Litigation Reform Act (PLRA) provides that a prisoner cannot bring a federal lawsuit "until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a); see also Woodford v. Ngo, 548 U.S. 81, 93 (2006) (holding that the PLRA requires proper exhaustion of administrative remedies). Exhaustion requires that a prisoner comply with the rules applicable to the grievance process at the inmate's institution. Pozo v. McCaughtry, 286 F.3d 1022, 1025 (7th Cir. 2002). This requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). The purpose of the exhaustion requirement is to "permit the prison's administrative process to run its course before litigation begins." Dole v. Chandler, 438 F.3d 804, 809 (7th Cir. 2006) (quoting Cannon v. Washington, 418 F.3d 714, 719 (7th Cir. 2005)); see also Kaba v. Stepp, 458 F.3d 678, 684 (7th Cir. 2006). The Seventh Circuit applies a "strict compliance approach to exhaustion," and expects prisoners to adhere to "the specific procedures and deadlines established by the prison's policy." Dole, 438 F.3d at 809; see also Hernandez v. Dart, 814 F.3d 836, 842 (7th Cir. 2016) (citations omitted).

Wisconsin has implemented the Inmate Complaint Review System (ICRS) under which inmate grievances concerning prison conditions or the actions of prison officials are "expeditiously raised, investigated and decided." Wis. Admin. Code §DOC 310.01. Under the ICRS, the first step in the grievance process requires an inmate to file a complaint with the institution complaint examiner within fourteen calendar days after the event that gave rise to the complaint, unless good cause exists to excuse a delay. §DOC 310.07(2). The institution complaint examiner has the authority to accept, return, or reject the complaint. §§DOC 310.10(2), (5)-(6), (9). If a reviewing authority renders a decision, the inmate may appeal that decision to the corrections complaint examiner within fourteen calendar days. §DOC 310.12(1). After receiving an appeal, the corrections complaint examiner must recommend a decision to the DOC Secretary, who adopts or rejects the recommendation. §DOC 310.12(9). "The secretary's decision is final." §DOC 310.13(3). Failure to properly exhaust each step of the grievance process constitutes failure to exhaust available administrative remedies. Pozo, 286 F.3d at 1025.

The plaintiff filed his first inmate complaint—DCI-2016-17910—on time, and it was reviewed, dismissed, appealed and dismissed on appeal. The problem is that what the plaintiff complained about in that complaint is not what he complains about in this lawsuit.

In that complaint, the plaintiff told the prison staff that he'd been terminated from his job on August 18, 2016 without any warnings, tickets or

prior negative evaluations. Dkt. No. 21-3 at 11. He said that he was fired because of his medical restrictions and his inability to do certain things. Id. He explained the history of his injury and what he'd done to make sure his restriction was in the system. Id. He alleged that he got the bad evaluation because his medical restrictions had been posted. Id. at 12. The complaint did not mention Shurpit or Falke. It said nothing about anyone requiring that the plaintiff perform tasks in violation of his medical restrictions or threatening to fire him if he didn't. It complained about one thing—the fact that the plaintiff got a bad evaluation and was fired from his kitchen job.

     In this lawsuit, the plaintiff has alleged that even though he told her he had a medical restriction to the contrary, Shurpit said that if he did not perform tasks involving lots of lifting and repetitive movement with his right arm and shoulder, she would have him fired. Dkt. No. 1 at 2-3, ¶¶3-4, 6. He claimed that he told Shurpit on August 17 that he was going to tell his doctor that she was "working him against his work restriction," and that the next day, he was fired. Id. at 2-3, ¶¶3, 7. The complaint alleges that the plaintiff told Falke that Shurpit had made him do things that went against his medical restriction, but that Falke told him that he should not have reported that fact to his doctor. Id. at p. 2, ¶5. Judge Duffin allowed the plaintiff to proceed on Eighth Amendment claims that Shurpit subjected him to cruel and unusual punishment by making him do work he was restricted from doing, and that Falke knew about it but did nothing. Dkt. No. 8.

9

"The exhaustion procedure requires plaintiff to raise his claim initially in an inmate complaint and receive a decision on that complaint." <u>Malone v. Clark</u>, No. 04-C-229-C, 2004 WL 2504211, at *5 (W.D. Wis. Oct. 26, 2004). The plaintiff did not raise his Eighth Amendment claims against Shurpit and Falke in his first inmate complaint. (He didn't raise them in the second complaint, either, and he concedes that that second complaint is not relevant to this case.) Because the plaintiff did not give the prison an opportunity to consider these claims before filing his suit in federal court, the plaintiff has failed to exhaust his claims, and he can't proceed on them in federal court.

## IV. Conclusion

The court **GRANTS** that the defendants' motion for summary judgment for failure to exhaust administrative remedies. Dkt. No. 16.

The court **ORDERS** that this case is **DISMISSED without prejudice**.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within 30 days of the entry of judgment. <u>See</u> Federal Rule of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. <u>See</u> Federal Rule of Appellate Procedure 4(a)(5)(A).

Under limited circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief

from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within 28 days of the entry of judgment. The court cannot extend this deadline. <u>See</u> Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. <u>See</u> Federal Rule of Civil Procedure 6(b)(2).

The court expects parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated at Milwaukee, Wisconsin, this 29th day of July, 2019.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**United States District Judge**